## POMEROY v. WALKER.

### Patent Appeal No. 3120.

#### Court of Customs and Patent Appeals.
#### April 24, 1933.

Cushman, Bryant, Darby & Cushman, of Washington, D. C. (Arlon V. Cushman and Henry T. Hornidge, both of New York City, of counsel), for appellant.

Jones, Addington, Ames & Seibold, of Chicago, Ill. (Bertram Wm. Coltman, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellee, Walter D. Walker, filed his application in the United States Patent Office on February 18, 1927, for a patent on improvements in composite photography. The substance of the claimed invention was a method of obtaining an image upon one photographic film, then superimposing an image carried by another photographic film upon the first film, and then photographing the images thus placed in such a manner that a composite image resulted, which composite image appeared to the observer to be the result of one photographic operation. The process will be more fully described hereinafter.

·In response to suggestions made by the examiner, the specification and claims were variously amended on January 19, 1928, and on May 6, May 20, May 21, July 4, and July 8, 1929.

On February 7, 1927, the appellant filed his application for a patent covering the same subject-matter, which went to patent on June 4, 1929. Thereupon the examiner suggested to the appellee the addition of claim 1 of said Pomeroy patent for purposes of interference, and by amendment such claim was added to appellee's application. It constitutes the single count of the interference, and is as follows: "The method of producing a composite photograph embodying two component parts, that includes making a transparent image of one component, making an image of the other component substantially uniformly opaque to light but reflective of light to show its image details, superposing the two ·images and illuminating the first image by transmitted light and the second mentioned image by reflected light, and exposing a fresh actinic surface to the first image and the second image so illuminated and superposed."

Thereafter the appellee moved to add to the interference claims 2, 3, and 4 of the Pomeroy patent, and a claim numbered 5, which was not copied from said patent. The appellee, Walker, moved to dissolve the interference on the ground that an inoperative method was disclosed in the Pomeroy patent. The appellant, Pomeroy, moved to dissolve the interference on the ground that the appellee, Walker, had no right to make the claim of the interference. The Law Examiner denied Walker's motion to add counts 2, 3, 4, and 5, and his motion to dissolve the interference on the ground of inoperativeness. He also denied the motion by Pomeroy to dissolve the interference.

Both parties took testimony. The Examiner of Interferences awarded priority to Walker, the junior party and appellee. This decision was affirmed by the Board of Appeals. The principal point involved in the decision before the Board of Appeals was the contention made by the appellant, Pomeroy, that Walker had not made such a disclosure in his original application as would justify a claim such as constitutes the count of the interference. The three tribunals in the Patent Office concurred in their holdings that Walker could make the count upon the disclosure he had so made.

The appellant brings the matter here, and waives any question of priority as it appears upon the record, resting his appeal entirely upon the ground that the Board of Appeals erred in deciding that the appellee, Walker, could make the count of the issue. This, therefore, is the only question now before us and the case will be determined on that issue.

A brief description of Walker's method, as shown by his original disclosure, becomes necessary. The general purpose thereof is to produce a photographic image upon a film by ordinary photographic processes, which image usually consists of the scenery "against which the actors are arranged to perform." This film is transparent, and capable of transmitting light to illuminate the photographic images thereon. The image to be superimposed upon the background is also a photographic image carried upon another film. The images carried upon this superimposed film are made opaque to transmitted light by the application of "a coating of material 4, which is impervious to the passage of light, *on the rear surface of the foreground film 2, and particularly over the image or images thereon.*" (Italics not quoted.)

One film is then superimposed upon the other, the foreground film being the one upon which the image has been thus rendered impervious to transmitted light. A composite picture is then made of the images upon these films so placed, by means of an ordinary camera. The illumination of the films for this purpose is made by the use of, preferably, two sources of light, as shown by Figure 5 of the drawings. These sources of illumination are placed, one back of the films and having the said films interposed between this light and the lens of the camera, and the other in front of the foreground film and upon the same side as the camera. An alternative method of illumination is provided which consists of one light in front of the foreground film, and a mirror so arranged back of the background film that light will be reflected against the rear of the background film.

In his specification, Walker makes the following disclosures as to his method of illumination:

"The method consists broadly in producing the background and foreground films as desired, and the superimposing of the latter upon the former in a manner permitting a positive or negative film to be produced from a single exposure; the image on the foreground film preferably having the rear surface thereof coated so as to render the image impervious to the passage of light whereby, by the proper control of light, the relative illumination of the foreground upon the background may be controlled. By means of this arrangement, the proper brilliancy of both the background and foreground is obtained. * * *

"* * * However, I preferably provide two sources of light 7 and 8, which may be suitably controlled, and which will properly illuminate the background and foreground films and provide the necessary brilliancy of the image on the foreground."

The first claim of the applicant's original application is as follows: "1. The method of superimposing an image upon a background which comprises preparing the rear surface of the image to render it impervious to the passage of light, then placing the background and image together in proper relation and regulating the flow of light on both from different sources to obtain the proper illumination of each, and then photographing the same to provide a negative or positive of the picture thereby obtained."

The drawings accompanying Walker's application illustrate Walker's process. Figure 1 is a section of the background film, representing the image of a building located by the side of a body of water. Figure 2 is an image of a sailboat, upon the foreground film. This image is shown in black and white, the sails being white and the hull and spars in black. Figure 3 is an illustration, in silhouette, of the same boat, which represents the impervious coating which is applied to the back of the image on the foreground film. Figure 7 shows the finished composite film, showing the image of the boat superimposed upon the water appearing on the background film. It is to be noted that the image of this boat is shown to have white sails and black hull and spars. That portion of the building back of the boat is blocked out and not visible in the finished film.

The patent of Pomeroy shows a process whereby, by the use of various colored lights, films, and light filters, and by the use of two lights, the patentee is claimed to be enabled to illuminate his back image by transmitted light and his front image by reflected light, and to thus obtain a resultant image which is a true composite. It seems unnecessary to further allude to his particular process. It was claimed by Walker in the Patent Office to be inoperative, but that question is not presented here.

Pomeroy insists that Walker's original

disclosure is deficient in many respects: First, that Walker discloses a black coating for the image upon the foreground film, and that such a coating will not reflect light. In support of this, he calls attention to the representation of the vessel in silhouette on Figure 3. Second, he alleges that the "front" of a film is the emulsion surface, and that, as Walker has stated that he applies his coating to the back surface, the thickness of the film will intervene between the image and the coating, which will make the process imperfect, and, to a large degree, inoperative. Third, that Walker did not disclose a method of illuminating his front image by reflected light in his original application.

Pomeroy's counsel also argue that the count of the interference did not read upon Walker's original disclosure, and that, therefore, these amendments constituted new matter. Such new matter, it is argued, cannot aid the original disclosure of Walker, under the authorities, and that Walker's only remedy was to file a new application. In re Scott, 25 App. D. C. 307, and Michigan Central Railroad Co. v. Consolidated Car Heating Co. (C. C. A.) 67 F. 121, 125, are principally relied upon in support of this theory. It is also stated in argument that the examiner, approximately twenty-one months after the filing of Walker's application, called Walker's attention to the fact that his disclosure "is not sufficiently clear, and that the drawing is, in some respects, inaccurate. It is therefore suggested that applicant furnish, if possible, a set of films corresponding to Figs. 1, 2, 3, and 7 so that a clear understanding of applicant's method may be had."

All amendments to the application were made as suggested by the examiner, and the claims were amended to show an illumination of the front image by reflected light, while Pomeroy's application was pending. This circumstance, it is thought by Pomeroy's counsel, proves most convincingly that the original disclosure was defective and that the amendments presented new matter. When Pomeroy's patent issued, the examiner suggested to Walker that claim 1 of this patent was readable on Walker's disclosure, and suggested the addition of such claim for purposes of interference.

The appellant also argues that the various Patent Office tribunals have held that it was obvious, from Walker's original disclosure, that his foreground image must be so treated as to be reflective of light. If this be so, it is asked: Why were amendments as to this feature required? It is further stated that this feature was held to distinguish Walker from the reference Sudmann, No. 1,198,600. The inference drawn by counsel is that this feature must, therefore, have constituted patentable subject matter, and, therefore, was new matter not originally disclosed.

We are unable to agree with counsel for appellant in any of these respects.

It will be apparent to any one skilled in the art, from a consideration of Walker's original specification, drawings, and claims, that he had the conception of a background film illuminated by transmitted light and a foreground film illuminated by reflected light. Otherwise, there is no apparent necessity for the dual light system employed, and the opaque coating for the image upon his foreground film. It is conceded that a black image upon the foreground film would not be reflective. Inasmuch, however, as the completed picture shown in Figure 7 shows the superimposed image distinctly and in its proper coloring, the coating upon its rear surface must have been reflective, or light colored. The Board of Appeals makes this comment, which, so far as we are advised, is correct: " * * * Patent Office drawings are made in black and white and the illustration of the coating in black is without significance. We believe those skilled in the art would readily appreciate that black coating material should not be used since the treated foreground image is to be reflected."

■ It is likewise apparent, from a reading of Walker's application, that when he speaks of the "rear surface" of the foreground film, he refers to that portion farthest from the camera, or the emulsion surface. Whatever the opinion of expert witnesses may be about what constitutes the rear surface of a film, this application, and all others, must be read in the light of its specification, drawings, and claims. When this is done, no doubt can be entertained as to the meaning of appellee's disclosure on this point.

■ It appears, from his letters, that when the examiner required certain amendments to appellee's specification, and required appellee to furnish films showing his processes, he did so for clarification, and not upon the theory that the appellee had not disclosed the subject-matter of the count now in issue. No reason appears why such amendments for clarification may not be properly suggested and made in the Patent Office, even while another application is therein pending, disclosing the same invention.

The rule announced in Re Scott, supra,

by the Court of Appeals of the District of Columbia, is that amendments of applications and claims are freely allowed, "provided that they are disclosed and there is a proper basis for them in the original specifications or drawings, yet no such amendment or addition shall be allowed when the proposed amendment or addition involves new matter not so disclosed in the original application."

Michigan Central R. R. Co. v. Consolidated Car Heating Co., supra, announced the rule:

" * * * No doubt, it is competent to amend the specifications while the application is pending, so long as it is done within the scope of the original application; but it is not competent, under color of this privilege, to introduce new matter. * * *

"It will be seen from the opinion in Railway Co. v. Sayles [97 U. S. 554, 24 L. Ed. 1053] that the objection to new matter brought in by amendment of the specifications stands upon the same ground as when it is introduced upon a reissue, and in respect to the latter the statute declares that it shall not be done. Rev. St. § 4916 [35 USCA § 64]."

This, we have no doubt, is the applicable rule. It becomes, therefore, a question merely as to whether appellee had disclosed the subject-matter of the count of the interference in his original application. Being of opinion that he did so disclose the same, the claim of new matter cannot be sustained.

Finally, as to the Sudmann patent, No. 1,198,600, it does not appear from the record that the matter added to Walker's application by amendments was used by the Patent Office to distinguish Sudmann from Walker. On that point, the examiner stated, as shown by the communication of appellee's counsel with the office, the following: "At an oral interview cordially extended to applicant and his attorneys, the Examiner called attention to United States Letters Patent No. 1,198,-600, granted to C. L. Sudmann on Sept. 19, 1916 and pointed out that the image areas defined by the drawings on strip B were opaque. It was noted, however, that this patent failed to anticipate applicant's claims, because it does not contemplate nor disclose the use of a light reflective material, and further because the method disclosed by this patent relates solely to cartoon films and teaches only opaquing of the image area, either on the *front* surface or on the rear surface of strip B, thereby producing the image somewhat as a silhouette against the background in the composite picture. Applicant does not produce his images as a silhouette. His method is entirely different. Inasmuch as Sudmann fails to teach the use of preparing the image with a material which is reflective of light, it was the Examiner's opinion that Sudmann did not anticipate applicant's claims."

We are of opinion that there is no error in the decision of the Board of Appeals, and it is affirmed.

The party Pomeroy filed, by leave of court, a reply brief. Walker moves to strike the same from the files, as being in violation of said order, and asks leave to reply thereto if the same remains on file. The reply brief does not appear to be in conflict with the spirit of the court's order. Both motions are denied.

Affirmed.